1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BARRY LOUIS LAMON,                          No.  2: 20-cv-1474 KJN P

12                 Plaintiff,

13        v.                                      ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14   S. MEY, et al.,

15                 Defendants.

16

17        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  On August 4, 2020, the undersigned granted plaintiff thirty days to file an

19   amended complaint.  (ECF No. 7.)  On August 12, 2020, plaintiff filed objections to the August 4,

20   2020 order.  (ECF No. 11.)  However, on August 27, 2020, plaintiff filed an amended complaint.

21   (ECF No. 12.)

22        The undersigned finds that by filing the amended complaint plaintiff has, in effect,

23   withdrawn his objections to the August 4, 2020 order.  The undersigned herein screens the

24   amended complaint.  Plaintiff may file objections to the instant order addressing the amended

25   complaint.

26   Plaintiff's Allegations

27        All defendants are employed at High Desert State Prison ("HDSP").  Named as

28   defendants are Warden Spearman, K. Grether, S. Mey, C. Dore, M. Gonzalez, B. Sharp,

1

1   Correctional Officer Rendon, Correctional Officer Torres, Correctional Officer McDonald,

2   Correctional Sergeant Roderick, Supervising Cook Pusey, Assistant Food Manager Rentfrow-

3   Bunn and Correctional Sergeant Smith.

4          Plaintiff alleges that on or around April 2004, he was housed at California State Prison-

5   Sacramento ("CSP-Sac").  Plaintiff alleges that in April 2004, plaintiff contacted attorney Peter

6   Gold and informed him that CSP-Sac officials were retaliating against him for filing a lawsuit in

7   federal court by housing plaintiff on the most gang-active and violent facility, despite plaintiff's

8   schizophrenia diagnosis.  Plaintiff told Mr. Gold that prison officials falsely claimed that they

9   were investigating plaintiff's safety concerns.  Plaintiff alleges that Mr. Gold told him that the

10  only way to disprove the claim by CSP-Sac officials that they were investigating his safety

11  concerns would be for plaintiff to provide them with information to investigate.  Based on this

12  advice, plaintiff wrote a 9-pages long letter ("2004 letter") containing "fictional scenarios" which

13  the "ineptest investigator" could disprove.  The 2004 letter falsely claimed that plaintiff was a

14  gang member, a federal informant, a participant in the federal witness protection program, and

15  other "outlandish" things.  Plaintiff alleges that California Department of Corrections and

16  Rehabilitation ("CDCR") could have easily disproved everything in the 2004 letter.  Plaintiff

17  alleges that instead CSP-Sac staff accepted the 2004 letter as true and placed plaintiff in

18  protective custody based on the contents of the 2004 letter.

19         Plaintiff alleges that on or around April 18, 2018, while housed at California State Prison-

20  Corcoran ("Corcoran"), he mailed a letter to the CDCR Ombudsman alleging that Corcoran

21  officials had enlisted staff and inmates to "taint" plaintiff's meals and to publicize the knowingly

22  false information contained in the 2004 letter.  Plaintiff alleges that Corcoran officials took these

23  actions in retaliation for plaintiff filing two lawsuits against Corcoran prison officials.  Plaintiff

24  alleges that if other inmates knew the contents of the 2004 letter, they would be motivated to

25  commit violence toward plaintiff.

26         Plaintiff alleges that after receiving plaintiff's letter, the CDCR Ombudsman ordered

27  Corcoran officials to transfer plaintiff.  Plaintiff was transferred to segregation while awaiting his

28  transfer.  Plaintiff claims that while he was housed in segregation, he was housed with inmates

1   Ogg and Ortiz.

2       Plaintiff alleges that Corcoran officials entered into a scheme with defendant Spearman to

3   transfer plaintiff to HDSP so that an identical pattern of retaliation could continue.  Plaintiff

4   alleges that inmates Ogg and Ortiz were transferred with plaintiff to HDSP on or around June 20,

5   2018.  Plaintiff alleges that inmates Ogg and Ortiz were housed in the same building at HDSP as

6   plaintiff.  Plaintiff alleges that inmates Ogg and Ortiz began publicizing the false information

7   regarding plaintiff contained in the 2004 letter.  Plaintiff alleges that inmates Ogg and Ortiz also

8   distributed copies of the 2004 letter.  Plaintiff also alleges that all defendants distributed the 2004

9   letter to other inmates in order to cause inmates to harm plaintiff.

10      Plaintiff alleges that upon his arrival at HDSP, defendants Grether and Sharp housed

11  plaintiff in a cell near inmates Ortiz and Pickett.  Plaintiff alleges that the day after he arrived at

12  HDSP, inmate porters began flooding his cell with gallons of filthy wastewater.

13      Plaintiff alleges that defendants Pursey and Rentfrow-Brown provided meals to inmate

14  kitchen-workers to give to plaintiff.  Plaintiff alleges that these meals were laced with a powerful

15  sedative, which plaintiff believes was Visine eyedrops.

16      Plaintiff alleges that on July 1, 2018, he submitted a grievance alleging that 1) defendants

17  Dore, Gonzalez, Rendon, Torres and McDonald were enlisting inmate porters to flood plaintiff's

18  cell; 2) inmates Pickett, Ortiz and Ogg were publicizing the contents of the 2004 letter; and

19  3) defendants Rentfrow-Bunn and Pursey were enlisting inmate kitchen-workers to provide

20  plaintiff with meals laced with a powerful sedative.  Plaintiff alleges that he did not receive a

21  response to this grievance.

22      Plaintiff alleges that on July 2, 2018, defendants Roderick and Mey demanded that

23  plaintiff give them the bag of coffee and donuts that plaintiff had brought to the dining hall.

24  Plaintiff told defendants that everybody walking down the path also had food that they had

25  brought to the dining hall.  Defendant Mey responded, "Yeah, they can have theirs because they

26  are not like you, who snivels and files grievances and lawsuits against staff."  Defendants

27  Roderick and Mey began eating plaintiff's donuts and telling plaintiff how much they would

28  enjoy drinking his coffee.  Plaintiff told defendants that prison regulations stated that plaintiff was

1   entitled to send his contraband food home and that defendants were violating state law by eating

2   his food.  Defendants told plaintiff to file a grievance.

3          Plaintiff told defendants Sharp and Smith about the confiscation of his donuts and coffee

4   by defendants Roderick and Mey.  Defendant Sharp laughed and stepped outside of the office.

5   Defendant Smith told plaintiff that he would see what defendants Roderick and Mey had to say

6   for themselves.

7          Later that night, plaintiff filed a grievance about the confiscation of his donuts and coffee

8   by defendants Roderick and Mey.  Plaintiff also complained that defendants Sharp and Smith had

9   ignored his complaints.  Plaintiff received no response to this grievance.

10         On July 5, 2018, defendant Mey went "out of bounds" from his assigned post and came to

11  plaintiff's cell.  Defendant Mey asked the Gun Tower Control Officer, Correctional Officer

12  Aleman, to open plaintiff's cell.  Defendant Mey ordered plaintiff to come to the officer's podium

13  fifteen feet away from plaintiff's cell.  Plaintiff alleges that defendants Mey and Gonzalez asked

14  plaintiff to give them his ADA vest.  Plaintiff handed the vest to defendant Mey.  After giving

15  defendant Mey the vest, plaintiff remembered that he left his hearing aids and enema hose inside

16  the pocket of the vest.  Plaintiff reached toward defendant Mey and told him that he had left these

17  appliances in the vest.

18         Defendant Mey shouted, "So what are you going to just snatch it the fuck out of my

19  hands," and pepper sprayed plaintiff.  Defendant Mey then charged at plaintiff and struck plaintiff

20  in the back.

21         After defendant Mey struck plaintiff in the back, defendants Dore and Gonzales told

22  plaintiff to get on the floor.  Plaintiff complied with this order.  Defendant Dore told plaintiff that

23  defendant Mey had come to plaintiff's cell to exchange plaintiff's ADA vest because when he

24  took plaintiff's food, defendant Mey noticed that plaintiff had a pocket sewn into the vest, which

25  was not permitted.  Plaintiff alleges that defendant Mey stood over plaintiff and said, "Write this

26  up too motherfucker!  Here's something for you to run and tell the sergeant and anybody else you

27  want to.  I told you, nobody gives a fuck!"

28  ////

4

1        Plaintiff alleges that while he was held in the office following the assault by defendant

2    Mey, defendants Dore, Gonzalez, Mey, Grether, Smith, Roderick and Sharp met with an Officers

3    Union Representative and cooked up a scheme to charge plaintiff with assault of defendant Mey.

4    Plaintiff was placed in punitive segregation based on these charges.

5        On July 12, 2018, defendant Spearman chaired plaintiff's initial segregation unit screening

6    committee.  Plaintiff alleges that defendant Spearman and the members of the committee watched

7    a video of the incident involving defendant Mey.  Plaintiff alleges that the committee found that

8    the version of events put forth by defendants Mey, Grether, Dore, Gonzalez, Smith, Sharp and

9    Roderick was unsupported.  Plaintiff was released from segregation.

10        Plaintiff alleges that during the July 12, 2018 hearing, he told defendant Spearman that

11    defendants Dore, Torres, Gonzalez, Rendon and McDonald had enlisted inmate porters to

12    threaten and intimidate him.  Plaintiff allegedly told defendant Spearman that inmates Ortiz, Ogg

13    and Pickett were passing around copies of the 2004 letter.  Plaintiff alleges that he told defendant

14    Spearman that defendants Pusey and Rentfrow-Bunn were tainting his food.  Plaintiff alleges that

15    he told the committee that he had sent several grievances and request for interview forms

16    regarding these matters.  Defendant Spearman allegedly told plaintiff that "they" had received the

17    letter plaintiff wrote to defendant Spearman detailing defendant Mey's battery on plaintiff.

18    Defendant Spearman also denied plaintiff's request to be transferred to a different prison.

19        Plaintiff alleges that after his release from segregation, more than ten inmates and staff

20    members told plaintiff that defendant Mey had been separated from service during plaintiff's

21    segregation.  Plaintiff was informed that defendant Mey had used excessive force against no less

22    than ten inmates over the past three years and against at least five inmates over the past eighteen

23    months.  Plaintiff alleges that defendants Spearman, Grether, Sharp, Smith and Roderick knew

24    about these incidents of excessive force but had failed to take any corrective action.

25        Plaintiff alleges that after his release from segregation, defendant Grether told plaintiff

26    that he was recommending that plaintiff be transferred to Salinas Valley State Prison ("SVSP")

27    because he was a problem inmate.  Plaintiff told defendant Grether that he did not want to go to

28    SVSP because it had a higher level of custody.  Defendant Grether told plaintiff that he was

1    getting rid of his "complaining ass."

2         On or around September 12, 2018, plaintiff was transferred to SVSP.

3    Plaintiff's Legal Claims

4         *Claim One*

5         In claim one, plaintiff alleges that defendants Spearman, Grether, Roderick, Sharp and

6    Smith violated his Eighth Amendment rights by failing to take corrective action against defendant

7    Mey based on defendant Mey's history of assaulting other inmates.  Plaintiff alleges that the

8    failure of these defendants to take corrective action led to the assault by defendant Mey on July 5,

9    2018.  These allegations state a potentially colorable Eighth Amendment claim against defendants

10   Spearman, Grether, Roderick Sharp and Smith.

11        *Claim Two*

12        In claim two, plaintiff alleges that all defendants retaliated against him for filing

13   grievances.

14        A retaliation claim has five elements.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir.

15   2012).  First, a plaintiff must allege that he engaged in protected activity.  Id.  For example, filing

16   an inmate grievance is protected.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).

17        Second, the plaintiff must show that the defendant took adverse action against him.

18   Watison, 668 F.3d at 1114 (citation omitted).  "Third, the plaintiff must allege a causal

19   connection between the adverse action and the protected conduct."  Id.  In other words, the

20   plaintiff must claim the defendant subjected him to an adverse action because of his engagement

21   in protected activity.  Rhodes, 408 F.3d at 567.

22        "Fourth, the plaintiff must allege that the official's acts would chill or silence a person of

23   ordinary firmness from future [protected] activities."  Watison, 668 F.3d at 1114 (internal

24   quotation marks and citation omitted).  "Fifth, the plaintiff must allege 'that the prison

25   authorities' retaliatory action did not advance legitimate goals of the correctional institution...'"

26   Id. (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (1985).)

27        As in the original complaint, plaintiff alleges that defendants Mey and Roderick retaliated

28   against him for filing grievances when they selectively enforced a rule that inmates are not

                                                6

1    allowed to bring food into the dining room.  This claim does not state a potentially colorable

2    retaliation claim because defendants' enforcement of the rule, even if selectively enforced,

3    advanced the legitimate goal of the correctional institution, i.e., enforcement of valid rules and

4    regulations.  Accordingly, the undersigned recommends that this retaliation claim be dismissed.

5         Plaintiff also alleges that defendants Mey and Roderick retaliated against him for filing

6    grievances when they failed to follow the rules regarding contraband disposal, i.e., they ate

7    plaintiff's contraband donuts and planned to drink his contraband coffee rather than allowing

8    plaintiff to send the contraband home.  These allegations state a potentially colorable retaliation

9    claim.

10        Plaintiff alleges that defendant Mey assaulted him in retaliation for filing grievances and

11   for telling defendant Smith that defendants Mey and Roderick had wrongly confiscated his coffee

12   and donuts.  These allegations state a potentially colorable retaliation claim.

13        Plaintiff alleges that defendant Grether transferred him to SVSP in retaliation for plaintiff

14   filing grievances.  These allegations state a potentially colorable retaliation claim.

15        Plaintiff alleges that every other action taken by defendants against him alleged in the

16   amended complaint was motivated by retaliation.  However, plaintiff has not alleged sufficient

17   facts in support of these retaliation claims.  Plaintiff's conclusory allegations that all defendants

18   were motivated by retaliation are not sufficient to state potentially colorable retaliation claims.

19   See Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)

20   (conclusory and vague allegations do not support a cause of action.)  Accordingly, the

21   undersigned recommends that plaintiff's remaining retaliation claims be dismissed.

22        *Claim Three*

23        In claim three, plaintiff alleges that defendants violated his right to due process as detailed

24   in paragraphs 65-72 of the amended complaint.  Paragraphs 65-72 of the amended complaint

25   include plaintiff's retaliation claim.  Although not entirely clear, it appears that plaintiff is

26   claiming that defendants violated his right to due process by failing to process his grievances.

27        Prisoners do not have "a separate constitutional entitlement to a specific prison grievance

28   procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855

7

1    F.2d 639, 640 (9th Cir. 1988)).  Prison officials are not required under federal law to process

2    inmate grievances in any specific way.  Plaintiff's claim that defendants failed to process his

3    grievances does not state a potentially colorable due process claim because there is no right to a

4    particular grievance process or response.  See, e.g., Towner v. Knowles, 2009 WL 4281999, at *2

5    (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his

6    federal rights after defendant allegedly screened out his inmate appeals without any basis);

7    Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected

8    liberty interest in the vindication of his administrative claims.").

9        Accordingly, the undersigned recommends dismissal of plaintiff's due process claim.

10        *Claim Four*

11        In claim four, plaintiff alleges that all defendants violated his right to access the courts.

12    Plaintiff alleges that all defendants were motivated to dissuade him from exercising his First

13    Amendment right to petition the government for redress of grievances.  Plaintiff alleges that

14    defendants interfered with his efforts to exhaust administrative remedies, which is the "gate-way

15    to the courts."

16        Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey,

17    518 U.S. 343, 346 (1996).  However, in order to state a claim for the denial of court access, a

18    prisoner must establish that he suffered an actual injury.  Id. at 349.  "[A]ctual injury [is] actual

19    prejudice with respect to contemplated or existing litigation, such as the ability to meet a filing

20    deadline or to present a claim."  Id. at 348.

21        In the instant case, plaintiff has not adequately alleged that he suffered any actual injury

22    with respect to contemplated or existing litigation.  Plaintiff does not allege that defendants'

23    alleged failure to respond to his grievances actually prevented him from pursuing a civil rights

24    claim regarding the conditions of his confinement.  The undersigned also observes that although

25    prisoners are required to exhaust their administrative remedies prior to bringing suit pursuant to

26    42 U.S.C. § 1997e(a), such exhaustion may be excused where administrative procedures were

27    effectively unavailable, prison officials obstructed attempts to exhaust, or the plaintiff was

28    prevented from exhausting because procedures for processing grievances were not followed.  See

1    Sapp v. Kimbrell, 623 F.3d 813, 822-24 (9th Cir. 2010).

2         Because plaintiff has failed to allege an actual injury, the undersigned recommends

3    dismissal of his claim alleging violation of his right to access the courts.

4         *Claim Five*

5         In claim five, plaintiff alleges that all defendants violated California Government Code

6    sections 52 and 52.1.  By alleging violations of California Government Code sections 52 and

7    52.1, plaintiff is alleging violation of the Bane Act.

8         "The essence of a Bane Act claim is that the defendant, by the specified improper means

9    (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something

10   he or she had the right to do under the law or to force the plaintiff to do something that he or she

11   was not required to do under the law."  Simmons v. Superior Court, 7 Cal. App. 5th 1113, 1125

12   (2016) (internal citations and quotations omitted).  Key to a claim under the Bane act is an

13   allegation that the defendant used threats, intimidation, or coercion.  Shoyoye v. Cty. of Los

14   Angeles, 203 Cal. App. 4th 947, 959 (2012) ("It is the element of threat, intimidation, or coercion

15   that is being emphasized in Civil Code § 52.1").

16        Plaintiff alleges that, "by their conduct, as alleged in this complaint, defendants and each

17   of them made threats, intimidated, coerced and caused serious physical injury and mental pain to

18   plaintiff as their reprisals against his exercise of rights, privileges and immunities protected by the

19   Constitution of the State of California…"

20        The undersigned finds that plaintiff's claim that defendants Mey and Roderick failed to

21   properly process his contraband in retaliation for plaintiff's filing of grievances states a

22   potentially colorable Bane Act claim.  The undersigned also finds that plaintiff's claims that

23   defendant Mey assaulted him in retaliation for filing grievances and that defendant Grether

24   ordered his transfer to SVSP in retaliation for filing grievances state potentially colorable Bane

25   Act claims.  See Lipsey v. Goree, 2018 WL 4638309, at *4 (E.D. Cal. Sept. 25, 2018) (finding

26   that allegations that defendants engaged in retaliatory behavior against plaintiff because of his

27   propensity to file inmate grievances are sufficient to state a Bane Act claim) (citing Lopez v.

28   Cate, 2013 WL 239097, at *11 (E.D. Cal. Jan. 22, 2013) (concluding a cognizable Bane Act

                                              9

1   claim was stated against defendants where a cognizable First Amendment retaliation claim was

2   also stated against them).

3         Plaintiff does not allege that any other defendants threatened, intimated or coerced him in

4   an attempt to prevent plaintiff from doing something that he had a right to do or to force him to

5   do something that he was not required to do by law.  Accordingly, the undersigned recommends

6   that plaintiff's remaining Bane Act claims be dismissed.

7         *Claim Six*

8         In claim six, plaintiff alleges that all defendants violated his Eighth Amendment rights by

9   subjecting him to cruel and unusual prison conditions.  Plaintiff does not identify the conduct of

10  each defendant that allegedly violated his Eighth Amendment rights.  Nevertheless, the

11  undersigned discusses plaintiff's relevant allegations herein.

12        First, plaintiff alleges that Corcoran officials entered into a scheme with defendant

13  Spearman to have plaintiff transferred to HDSP so that HDSP could engage in the same pattern of

14  retaliation that HDSP officials had engaged in.  Other than this conclusory allegation, plaintiff

15  alleges no facts supporting his claim that defendant Spearman conspired with Corcoran officials

16  to have plaintiff transferred to HDSP in order to continue the alleged retaliation.  Plaintiff's

17  conclusory allegations against defendant Spearman do not state a potentially colorable Eighth

18  Amendment claim.  See Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268

19  (9th Cir. 1982) (conclusory and vague allegations do not support a cause of action).  Accordingly,

20  the undersigned recommends that this claim be dismissed.

21        Plaintiff alleges that upon his transfer to HDSP, all defendants distributed the 2004 letter

22  to other inmates in order to cause plaintiff harm.  Plaintiff alleges no other facts in support of this

23  claim.  The undersigned finds that these vague and conclusory allegations do not state a

24  potentially colorable Eighth Amendment claim.  See Ivey v. Board of Regents of the University

25  of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (conclusory and vague allegations do not support a

26  cause of action).  Accordingly, the undersigned recommends that this claim be dismissed.

27        Plaintiff alleges that defendants Pursey and Rentfrow-Bunn provided inmate kitchen

28  workers with meals for plaintiff that were laced with a powerful sedative, which plaintiff

1   identifies as Visine eyedrops.  Plaintiff alleges no other facts in support of this claim.  The

2   undersigned finds that plaintiff's conclusory allegations against defendants Pursey and Rentfrow-

3   Bunn do not state potentially colorable Eighth Amendment claims.  See Ivey v. Board of Regents

4   of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (conclusory and vague allegations

5   do not support a cause of action).  Accordingly, the undersigned recommends that these claims be

6   dismissed.

7         Plaintiff alleges that defendant Mey used excessive force when he allegedly assaulted

8   plaintiff on or around July 5, 2018.  These allegations state a potentially colorable Eighth

9   Amendment claim.

10        Plaintiff alleges that defendants Dore, Gonzalez, Grether, Smith, Roderick and Sharp

11  attempted to cover-up defendant Mey's alleged excessive force by filing false reports regarding

12  what occurred.  These allegations do not rise to the level of an Eighth Amendment claim because

13  the filing of false reports did not cause the alleged assault.  See Ragsdale v. Flores, 2015 WL

14  6164908, at *6 (C.D. Cal. 2015) (finding that defendant officer who allegedly participated in a

15  cover up by filing a false report about the alleged assault did not violate the Eighth Amendment

16  because "[p]reparing a false report about an incident after it occurred cannot subject that

17  individual to liability for the force used during the incident.")  Accordingly, plaintiff has not

18  stated potentially colorable Eighth Amendment claims against defendants Dore, Gonzalez,

19  Grether, Smith, Roderick and Sharp.

20        *Claim Seven*

21        In claim seven, plaintiff alleges that defendants violated California Government Code

22  § 3294.  Section 3294 of the California Government Code provides that a party may obtain

23  punitive damages by showing clear and convincing evidence that the defendant acted with malice,

24  fraud or oppression.

25        Plaintiff may proceed with his claim for punitive damages against defendants Mey,

26  Roderick and Grether, against whom he has stated potentially colorable claims pursuant to the

27  Bane Act.  Plaintiff's request to seek punitive damages against the other defendants, against

28  whom he has not stated potentially colorable state law claims, should be denied.

11

1  Conclusion

2         The undersigned finds that the amended complaint states the following potentially

3  colorable claims:  1) defendants Spearman, Grether, Roderick, Sharp and Smith violated the

4  Eighth Amendment by failing to take corrective action against defendant Mey; 2) defendants Mey

5  and Roderick retaliated against plaintiff for filing grievances by failing to properly dispose of

6  plaintiff's contraband coffee and donuts; 3) defendant Mey assaulted plaintiff in retaliation for

7  filing grievances and reporting the alleged assault; 4) defendant Grether transferred plaintiff to

8  SVSP in retaliation for plaintiff filing grievances; 5) defendants Mey, Roderick and Grether

9  violated the Bane Act by committing the allegedly retaliatory conduct; 6) defendant Mey violated

10  the Eighth Amendment by assaulting plaintiff.  The undersigned also finds that plaintiff may

11  proceed with his claim for punitive damages pursuant to California Government Code § 3294

12  against defendants Mey, Roderick and Grether.

13         Plaintiff has had one opportunity to amend his complaint.  The undersigned has spent

14  considerable time evaluating the original and amended complaints.  It is unlikely that plaintiff can

15  cure the pleading defects discussed above.  For these reasons, the undersigned herein

16  recommends dismissal of those claims found not colorable above.  The undersigned separately

17  orders service of those claims found colorable.

18         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall assign a district

19  judge to this action; and

20         IT IS HEREBY RECOMMENDED that all claims in the amended complaint, but for

21  those found potentially colorable above, be dismissed.

22         These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24  after being served with these findings and recommendations, plaintiff may file written objections

25  with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

27  ////

28  ////

12

1 failure to file objections within the specified time may waive the right to appeal the District

2 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3 Dated:  October 1, 2020

4 

5 KENDALL J. NEWMAN
  UNITED STATES MAGISTRATE JUDGE

6 

7 
  Lam1474.56

8 

9 

10 

11 

12 

13 

14 

15 

16 

17 

18 

19 

20 

21 

22 

23 

24 

25 

26 

27 

28